**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **BRANDON CALLIER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**REFERRALS TECH INC.** dba **ALL WEB REFERRALS,** a Delaware Corporation, **SG BENEFIT PROVIDERS, INC.,** a Delaware Corporation and **HEALTH CARE SERVICE CORPORATION** dba **HEALTHSPRING**, an Oklahoma Corporation<br><br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **EP-26-cv-01039-LS** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, resident of the Western District of Texas, and was present in El Paso County, Texas, for all texts in this case.

2. Defendant REFERRALS TECH INC. dba ALL WEB REFERRALS ("AWR") is a corporation organized and existing under the laws of Delaware. AWR operates websites https://allwebreferrals.com and https://comparequotes.at, and does not list an address on its websites. AWR can be served via its registered agent Harvard Business Services, Inc. 16192 Coastal Highway, Lewes, DE 19958.

3. Defendant SG BENEFIT PROVIDERS, INC. ("SGBP") is a corporation organized and existing under the laws of Delaware and can be served via its registered agent Cogency Global Inc, 850 New Burton Road, Suite 201, Dover, DE 19904.

4. Defendant HEALTH CARE SERVICE CORPORATION ("HCSC") dba HealthSpring is a corporation organized and existing under the laws of Oklahoma and can be served via its registered agent, Alina Adams Lyons, 10516 SW 24th Street, Yukon, OK 73099.

5. Non-named party BRANDON BROWNMAN ("Brownman") is a natural person and authorized agent of Defendant HCSC.

6. AWR, SGBP, and HCSC are hereinafter collectively referred to as "Defendants".

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over Count I under 28 U.S.C. § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

8. The Court has pendant jurisdiction over the Texas Business and Commerce Code claims under 28 U.S.C § 1367.

9. This Court has specific personal jurisdiction over Defendants because Defendants availed themselves of Texas and this forum by sending at least nine (9) spoofed phone calls into this district utilizing a 915-area code phone number.

10. This Court further has specific personal jurisdiction because Plaintiff brings claims under Chapter 301 of the Texas Business and Commerce Code. Texas law state that the venue for claims brought under Chapter 301 is the County in which the phone calls were received. TBCC § 301.105(2).

11. Venue is proper under 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.

Residing in the Western District of Texas, he received a substantial, if not every single, phone call from Defendant, which is the subject matter of this lawsuit.

**THE TELEPHONE CONSUMER PROTECTION ACT**

**OF 1991, 47 U.S.C. § 227**

12. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes. 47 U.S.C. § 227(b)(1)(B).

15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

16. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18. The FCC recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19. The FCC requires "prior express consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

20. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

23. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**TEXAS BUSINESS AND COMMERCE CODE CHAPTER 301**

24. A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor, immediately after making contact with the consumer to whom the call is made, identifies himself or herself by name, the business on whose behalf the telephone solicitor is calling, and the purpose of the call. TBCC § 301.051(b)(A-C).

25. A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor makes the call after 12 noon or before 9 p.m. on a Sunday or after 9 a.m. and before 9 p.m. on a weekday or a Saturday. TBCC § 301.051(b)(2).

26. A consumer injured by a violation of this chapter may bring an action for recovery of damages. TBCC § 301.104.

27. A consumer injured by a violation of this chapter may bring an action for recovery of damages. The damages awarded may not be less than the amount the consumer paid the person who sold the consumer goods or services through the use of the telephone solicitor, plus reasonable attorney's fees and court costs.

28. Venue for an action brought under this chapter is in the county in which the consumer telephone call was received. TBCC § 301.105(2).

**TEXAS BUSINESS AND COMMERCE CODE CHAPTER 302**

29. "Telephone call" has the meaning assigned by Section 304.002. TBCC § 302.001(6-a).

30. "Telephone solicitation" means a call or transmission, including a transmission of a text or graphic message or of an image, initiated by a seller or salesperson to induce a person to induce a person to purchase, rent, claim, or receive an item. Tex. Bus. & Com. Code § 302.001(7).

31. An "item" is defined as a property or service." Tex. Bus. & Com. Code § 302.001(1).

32. A person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation. Tex. Bus. & Com. Code § 302.002.

33. A "seller" is defined as "A person who makes a telephone solicitation on the person's on behalf." Tex. Bus. & Com. Code §302.001(5).

34. A "salesperson" is defined as "A person who is employed or authorized by a seller to make a telephone solicitation." Tex. Bus. & Com. Code §302.001(4).

35. A person commits an offense if the person knowingly acts as a salesperson on behalf of a seller who violates the registration requirements of this chapter. Tex. Bus. & Com. Code §302.252(a).

36. When a telephone solicitation is made and before consummation of any sales transaction, a seller shall provide to each purchaser the complete street address of the location from which the salesperson is calling the purchaser and if different, the complete street address of the seller's principal location. TBCC § 302.202(1).

37. The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. TBCC § 302.003(b)

38. Federal common law principles of agency apply to TBCC violations…and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller. *Guadian v. Progressive Debt Relief, LLC*, No. EP-23-cv-235, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023); *see also Callier v. Tip Top Cap. Inc.*, No. EP-23-cv-437, 2024 WL 1637535, at *3 (W.D. Tex. Apr. 16, 2024) (holding that a seller violates § 302.101 when a telemarketer makes calls on behalf of a seller who does not hold a registration certificate); *Forteza v. Pelican Inv. Holdings Grp., LLC*, No. 23-cv-401, 2023 WL 9199001, at *6 (E.D. Tex. Dec. 27, 2023) (same); *Salaiz v. Beyond Fin., LLC*, No. EP-23-cv-6, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (refusing to dismiss a § 302.101 claim because "Plaintiff has plausibly alleged that Defendant effected or attempted to effect the thirteen calls Plaintiff received by hiring telemarketers to make those calls.").

39. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

40. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

41. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

**TEXAS BUSINESS AND COMMERCE CODE § 305.053**

42. A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication for damages in the amount provided by this section. Tex. Bus. & Com. Code § 305.053(a)(2).

43. A plaintiff who prevails in an action for damages under this section is entitled to the greater of $500 for each violation or the plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(b)(1-2).

44. The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. & Com. Code § 305.055.

**FACTUAL ALLEGATIONS**

45. Plaintiff does not have Medicare and has no need for Medicare insurance.

46. Defendant AWR offers sales lead generation services and sells leads to generate income.

47. Defendant AWR operates two websites where it sells lead generation services, https://comparequotes.ai and https://allwebreferrals.com.

48. Neither Plaintiff or anybody associated with Plaintiff has ever visited https://comparequotes.ai or https://allwebreferrals.com.

49. Neither Plaintiff or anybody associated with Plaintiff has ever requested any information or services from Defendants at any point in time.

50. Defendant AWR does not sell insurance and is not exempt from the requirement to register for telephone solicitation in Texas. Defendant AWR's lead generation services are charged to consumers via built-in charges collected at the point of sale by AWR clients.

51. Defendant AWR sells leads obtained via prerecorded messages. AWR's website states, "Inbound Medicare live leads on the phone ready to close at 33%+ closing rate."

52. Defendant AWR's platform has a login to a dashboard that allows the user to accept or reject leads, giving the user interactive control and participation in the call process.

53. Defendant SGBP contracts with AWR and subscribes to AWR's platform and lead generation services.

54. Defendant SGBP is a health technology venture that offers workflow automations and lead generation for health insurance and other companies.

55. SGBP does not act as an insurance salesperson, but rather sells its automation and lead generation services.

56. SGBP does not sell life insurance and is not exempt from the requirement to register for telephone solicitation in Texas. Defendant SGBP's lead generation and automation services are charged to consumers via built-in charges collected at the point of sale by insurance agent clients

57. Defendant HCSC offers Medicare insurance products via telemarketing through prerecorded messages.

58. Defendant HCSC contracted with SGBP for its automation services and referral services.

59. Defendant HCSC entered into an automation and referral agreement with SGBP with full knowledge SGBP obtains leads from AWR that are obtained through the use of prerecorded messages.

60. SGBP was HCSC's agent and AWR was HCSC's subagent, as HCSC acted as an agent of SGBP.

61. HCSC had full prior knowledge SGBP and AWR would violate the TCPA as part of its authorized marketing campaign and accepted the benefits of those violations.

62. HCSC coordinated with SGBP and AWR to create the script utilized in the prerecorded messages received by Plaintiff. HCSC approved the script.

63. Plaintiff has received at least nine (9) prerecorded phone calls to his business cell phone ending in 1804.

64. Each of the phone calls in this case was a solicitation phone call selling life insurance.

65. Each of the phone calls in this case utilized a spoofed caller identification number with a 915-area code.

66. Each of the phone calls in this case contained a prerecorded non-human robotic sounding voice message that stated:

> "Hello. Hi, this is Michelle. This call is important because your Medicare records are updated based on this verification. I just need to confirm, are you currently on Parts A and B? Let me connect you with a licensed Medicare expert to assist you further."

67. Plaintiff did not give Defendants consent to send any of these prerecorded messages.

68. Table A displays each of the phone calls received by Plaintiff from Defendants.

**TABLE A**

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| **1.** | 02/25/2026 | 10:05 AM | 915-629-0919 | Prerecorded Michelle – Got contract |
| **2.** | 02/25/2025 | 4:19 PM | 915-321-3944 | Prerecorded Michelle |

| | | | | |
|---|---|---|---|---|
| **3.** | 02/27/2026 | 8:36 AM | 915-290-1907 | Prerecorded Michelle |
| **4.** | 03/02/2026 | 12:38 PM | 915-219-4386 | Prerecorded Michelle |
| **5.** | 03/03/2026 | 11:19 AM | 915-207-9307 | Prerecorded Michelle |
| **6.** | 03/04/2026 | 10:03 AM | 915-751-8927 | Prerecorded Michelle |
| **7.** | 03/05/2026 | 11:08 AM | 915-765-6917 | Prerecorded Michelle |
| **8.** | 03/06/2026 | 1:21 PM | 915-333-3583 | Prerecorded Michelle |
| **9.** | 03/14/2026 | 11:24 AM | 915-270-9112 | Prerecorded Michelle |

69. On February 25, 2026, at 10:05AM Plaintiff received a phone call that displayed 915-629-0919 on Plaintiff's caller identification. Plaintiff answered the phone call and the same prerecorded message in paragraph 42 began to play.

70. Plaintiff does not have Medicare, but has an employee, Barbara Silva ("Silva"), that has Medicare. Plaintiff asked Silva if she would be interested in obtaining a Medicare quote.

71. Silva agreed to get a quote and went through the process of obtaining a Medicare quote. Silva was connected to the initial agent who asked Silva a series of qualifying questions before transferring Silva to another agent who identified himself by stating, "Thank you for calling to Medicare Group USA…My name is Brandon Brownman ("Brownman").

72. Bronwman asked Silva the same series of qualifying questions and approved Silva for a Medicare insurance policy with Defendant HCSC.

73. Brownman finished the application process by enrolling Ms. Silva by recording the remainder of the phone call and obtaining recorded confirmation of her intent to enroll in a Medicare supplement policy with Defendant HCSC.

74. Brownman informed Silva a welcome packet would be mailed to her home address.

75. Silva received a welcome packet from Defendant in the mail on February 27, 2026, that provided her with a customer ID ending in 6F48.

76. The insurance application did not contain a provision allowing Defendants to send Plaintiff prerecorded messages or use spoofed caller identification.

77. On March 23, 2026, Plaintiff called each of the phone numbers listed on TABLE A. None of the phone calls connected to Defendants indicating the phone numbers were spoofed.

78. Defendants called Plaintiff at 8:36 AM on February 27, 2026.

79. Each of the phone calls at issue in this Complaint was initiated by Defendant AWR as a lead and sold to Defendant SGBP.

80. The February 25, 2026, 10:05 AM phone call was initiated by AWR. The phone call was then routed to SGBP to solicitation. SGBP then routed the phone call to HCSC who completed the solicitation and sold a Medicare insurance policy.

81. None of the prerecorded messages properly identified Defendants.

82. Defendants utilized a shared telephone system that allowed AWR, SGBP, and HCSC to seamlessly transfer calls.

83. Defendants shared an integrated customer database that allowed AWR to instantly transfer calls to SGBP and SGBP to instantly transfer customer information to HCSC.

84. SGBP maintained interim control over AWR including when, and under what circumstances, it would accept transfers.

85. HCSC maintained interim control over SGPB including when, and under what circumstances, it would accept transfers, applications and approve insurance policies that were initiated by AWR and SGBP.

86. SGBP had both actual and apparent authority to act on behalf of HCSC.

87. "A principal is liable for its agent's acts when the agent has actual or apparent authority to commit those acts or when the principal ratifies them." *See Schrum v. Land*, 12 F.Supp.2d 576, 582 (S.D. Tex. 1997).

88. Under Texas law, a principal-agency relationship exists when an individual has actual or apparent authority to act on behalf of another or the latter ratifies the actions of former. *Debaillon v. Total Minatome Corp.*, 166 F.3d 339, 1998 WL 912094, *2 (5th Cir. 1998).

89. HCSC was aware of the phone calls being made to solicit their insurance products, and HCSC was aware that those phone calls were being made utilizing prerecorded messages.

90. On February 25, 2026, SGBP referred to a client for Medicare insurance to HCSC.

91. HCSC processed and approved the application with full knowledge prerecorded telemarketing calls were made to solicit Plaintiff and other consumers utilizing prerecorded messages.

92. HCSC accepted, and continues to accept, leads transferred from Defendants AWR and SGBP. HCSC has not severed its business relationship with AWR and SGBP and has done nothing to curtail AWR and SGBP from sending prerecorded messages on behalf of HCSC.

93. None of the nine (9) prerecorded phone calls properly stated the name of the company making the phone calls or the name of the seller.

94. All artificial or prerecorded voice telephone messages shall at the beginning of the message state clearly the identity of the business, individual, or other entity that is responsible for initiating the call. 47 C.F.R. § 64.1200(b)(1).

95. A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor, immediately upon making contact with the consumer to whom the call is

made, identifies himself or herself by name and the business on whose behalf the telephone solicitor is called. Texas Business and Commerce Code § 301.051(b)(1)(A-B).

96. Defendant made at least one (1) solicitation phone calls to Plaintiff before 8 AM local time.

97. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

98. On March 23, 2026, Plaintiff emailed Defendant and alerted them of the spoofed caller identification numbers used by Defendant.

99. No emergency necessitated the calls.

**INJURY, HARM, AND DAMAGES AS A RESULT OF THE CALLS**

100. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

101. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

102. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

103. Plaintiff has been harmed, injured, and damaged by the calls, including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

104. Plaintiff incurred increased electric bills as a result of more frequent charging of his cell phone related to the unauthorized phone calls.

**COUNT ONE:**

**Non-Emergency Prerecorded Call to Cellular Telephones, 47 U.S.C. 227(b)(1)(A)(iii)**
**(Against All Defendants)**

105. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-104.

106. The foregoing acts and omissions of Defendants and/or their affiliates or agent constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by making non-emergency telemarketing ATDS texts to Plaintiff's cellular telephone numbers without his prior express written consent.

107. Plaintiff was statutorily damaged at least nine (9) times under 47 U.S.C § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

108. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damages amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

**COUNT TWO:**
**Violations of Texas Business and Commerce Code § 301.051(b)(1)(A-C)**
**Failure to Identify**
**(Againt All Defendants)**

109. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-108.

110. Defendants did not immediately after making contact with the consumer to whom the call is made, identify himself or herself by name, the business on whose behalf the telephone solicitor is calling, and the purpose of the call. TBCC § 301.051(b)(1)(A-C).

111. Plaintiff was damaged at least nine (9) times by Defendants.

112. A consumer injured by the chapter may bring an action for recovery of damages. The damages may not be less than the amount the consumer paid the person who sold the consumer good or services through the use of the telephone solicitor. Tex. Bus. Com. Code § 301.104.

113. Plaintiff seeks damages in the amount of 1,000 per violating phone call.

**COUNT THREE**
**Violations of Texas Business and Commerce Code § 305.053**
**Prerecorded Phone Calls in violation of 47 U.S.C. 227(b)**
**(Against All Defendants)**

114. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-113.

115. Defendants placed at least nine (9) prerecorded phone calls to Plaintiff in violation of 47 U.S.C. § 227(b).

116. A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in theist ate against the person who originates that communication. Tex. Bus. Com. Code § 305.053.

117. Plaintiff was statutorily damaged at least nine (9) times under 47 U.S.C § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call. Tex. Bus. Com. Code § 305.053(b)(1).

118. If the court finds that the defendant committed the violation knowingly or intentionally, the court may increase the amount of the award of damages under Subsection (b) to not more than the greater of $1,500 for each violation. Tex. Bus. Com. Code § 305.053(c)(1).

119. The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. Com. Code § 305.055.

**COUNT FOUR**
**Violations of Texas Business and Commerce Code 302.101**
**Failure to Obtain a Telephone Registration Certificate**
**(Against Defendants AWR and SGBP)**

120. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-119.

121. The foregoing acts and omissions of Defendants AWR and SGBP and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making nine (9) non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

122. Plaintiff is entitled to an award of up to $5,000 in damages for each violation. Texas Business and Commerce Code 302.302(a).

123. Plaintiff is entitled to an award of all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Texas Business and Commerce Code 302.302(d).

**COUNT FIVE**
**Violations of Texas Business and Commerce Code § 301.051(b)(2)**
**Solicitation Calls Before 9 AM Local Time**
**(Againt All Defendants)**

124. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-123.

125. A telephone solicitor may not make a consumer telephone call to a consumer unless the telephone solicitor makes the call after 12 noon or before 9 p.m. on a Sunday or after 9 a.m. and before 9 p.m. on a weekday or a Saturday. TBCC § 301.051(b)(2).

126. Defendants called Plaintiff at 8:36 AM local time on February 27, 2026.

127. Plaintiff was damaged at least one (1) time by Defendants.

128. A consumer injured by the chapter may bring an action for recovery of damages. The damages may not be less than the amount the consumer paid the person who sold the consumer good or services through the use of the telephone solicitor. Tex. Bus. Com. Code § 301.104.

129. Plaintiff seeks damages in the amount of 1,000 per violating phone

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Callier prays for judgment against Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C. An award of $1,500 per call in statutory damages arising from the TCPA 47 U.S.C. 227(b) intentional violations for nine (9) calls;

D. An award of $1,000 per phone call in statutory damages arising from intentional violations of the Texas Business and Commerce Code 301.051(b)(1)(A-C) for nine (9) phone calls.

E. An award of $1,500 per call in statutory damages arising from TBCC 305.053 intentional violations for nine (9) calls;

F. An award of $5,000 per call in statutory damages arising from TBCC 302.101 violations by AWR for nine (9) calls;

G. An award of $5,000 per call in statutory damages arising from TBCC 302.101 violations by SGBP for nine (9) calls;

H. An award of $500 per call in statutory damages arising from TBCC 304.151(b)(3) for nine (9) phone calls;

I. An award of $1,000 per phone call in statutory damages arising from intentional violations of the Texas Business and Commerce Code 301.051(b)(2) for one (1) phone calls;

J. An award to Plaintiff of damages, as allowed by law under the TCPA;

K. An award to Plaintiff of damages, as allowed by law under the TBCC;

L. An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity.

M. Such further relief as the Court deems necessary, just, and proper.

Dated: April 10, 2026,

Respectfully submitted,

/s/ Brandon Callier

Brandon Callier
Plaintiff, Pro Se
1490 A George Dieter Drive
#174
El Paso, TX 79936
915-383-4604
Callier74@gmail.com